## FOWLES v. BRIGGS.

NEGLIGENCE—PROXIMATE CAUSE—INTERVENING AGENCY.

A shipper of lumber is not liable for injury to a railroad brakeman while coupling cars, by the shifting of the lumber because it was negligently loaded, where the accident happened after it had become the duty of the railroad company to provide for the inspection of the car.

Error to Saginaw; Snow, J. Submitted January 27, 1898. Decided March 29, 1898.

Case by John S. Fowles, administrator of the estate of Alexander T. Fowles, deceased, against Daniel W. Briggs and James Cooper, for the alleged negligent killing of plaintiff's intestate. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*George W. Weadock* and *John F. O'Keefe*, for appellant.

*Hanchett & Hanchett*, for appellees.

MONTGOMERY, J. Alexander T. Fowles, plaintiff's intestate, on the 4th day of February, 1896, was an employé of the Flint & Pere Marquette Railroad Company. His employment was that of rear brakeman on a freight train. The defendants, lumber dealers, loaded a flat car with lumber, in their yard in the city of Saginaw, and shipped it over the Flint & Pere Marquette Railroad Company, to Toledo, Ohio. The lumber was maple, 11,000 feet, weighing about 33,000 pounds, and piled flat upon the car in two tiers parallel with the sides of the car. It was put upon this flat car by the defendants three days before the day of the accident. The testimony of the plaintiff tended to show that the railroad crew, of whom the deceased was rear brakeman, were ordered by the railroad company, on the morning of the 4th of February, to make up some freight trains for transportation; and, in the line of their duty, this car load of lumber was shunted at a rate not to exceed from three to five miles an hour upon a level track towards a box car. The deceased was upon the ground, and stepped in between the box car and the car load of lumber for the purpose of coupling the two; and, when the car of lumber came in contact with the box car, the lumber shifted 25 inches upon the surface of the flat car, and crushed to death the deceased, by pinning him against the end of the box car.

The plaintiff's declaration declares the several acts of negligence of the defendants to be:

1. That they carelessly and recklessly loaded said flat car of said railroad company so as to cause the death of the deceased by the shifting of the lumber while upon said car; that said lumber was so loaded upon said car that it was not safe for an employé of said railroad company to couple it to another car, and that said danger was not apparent to the deceased.

2. That it was the duty of said defendants not to ship maple lumber upon a flat car without having the lumber so fastened and staked as to hold it from shifting.

3. That a piece of timber or other material should have been placed crosswise upon the floor and near the ends of said flat car, under the lumber, for the purpose of elevating the extreme ends of the lumber.

4. That the defendants loaded this lumber upon the deck of said car while the deck was covered with ice and snow and sleet, and in a slippery condition.

5. That the lumber was covered with ice and snow and sleet, and in a slippery condition.

6. That the lumber should have been placed in a box car, and not upon a flat car.

The cause was tried before a jury, and, after the proofs were all in, the trial judge said to the jury that "the evidence fails to show that the defendants violated any legal duty that they owed the deceased. Consequently, there is no question of fact to be submitted to you for your consideration. Your verdict, therefore, will be in favor of the defendants of no cause of action."

The deceased had no contract relations with the defendants, and, if his representative has a right of action based upon defendants' negligence, it must rest upon a duty owed to deceased in common with all other employés of the Flint & Pere Marquette Railroad Company, or other road over which the car in question might ultimately be shipped; in short, a breach of a duty owing to the public. An accurate statement of this duty is:

"If a person undertakes to do an act or discharge a duty by which the conduct of others may properly be regulated and governed, he is bound to perform it in such manner that those who are rightfully led to a course of conduct or action on the faith that the act or duty will be duly and properly performed shall not suffer loss or injury by reason of his negligence." Whart. Neg. § 437.

Yet, as stated by the same author, the confidence must be immediate, or the action fails. In other words, there must be casual connection between the negligence and the hurt, and such casual connection is interrupted by the interposition between the negligence and the hurt of an independent human agency. Id. § 438. In the present case the defendants owed the railroad company the duty of using ordinary care in loading the car in question; but, before the car came to decedent, it was the duty of the railroad company to provide for the inspection. Here was the intervention of an independent human agency. A leading case is *Winterbottom* v. *Wright*, 10 Mees. & W. 109, in which case it was held that the defendant, who had contracted with the postmaster general to provide a mail coach, and keep it in repair, was not liable to an employé of one Atkinson, who had contracted with the postmaster general to provide horses and coachmen for the purpose of carrying the mail. See, also, *Losee* v. *Clute*, 51 N. Y. 494 (10 Am. Rep. 638); *Goodlander Mill Co.* v. *Standard Oil Co.*, 11 C. C. A. 253, 63 Fed. 400; *Loop* v. *Litchfield*, 42 N. Y. 351 (1 Am. Rep. 543); *Roddy* v. *Railway Co.*, 104 Mo. 234 (24 Am. St. Rep. 333). In *Necker* v. *Harvey*, 49 Mich. 519, the leading cases on this point are cited with approval by Mr. Justice COOLEY.

Plaintiff seeks to bring this case within a line of cases cited creating an apparent exception to the rule stated; but we think these cases may be all classed as coming under one of three heads: *First*, as in *Johnson* v. *Spear*, 76 Mich. 139 (15 Am. St. Rep. 298), where the fault was not keeping defendant's premises in a suitable and safe condition; or, *second*, as in *Roddy* v. *Railway Co.*, *supra*, where the defendant reserves the right to direct the manner of work, or undertakes to supply the instrumentalities. Of this class is also *Elliott* v. *Hall*, 15 Q. B. Div. 315, relied upon by plaintiff, in which case it was said by the court that "the defendant had entire dominion over the truck" which caused the injury,—a fact which distinguishes the case from the present. Cases belonging

to a *third* class, more closely analogous to the case under consideration, have arisen where the shipper of a dangerous substance, the character of which is not made known to the carrier, has been held liable. But liability in this class of cases has been limited to instruments and articles in their nature calculated to do injury. *Davidson* v. *Nichols,* 11 Allen, 514. We think the case of *Chapman* v. *Atlantic Refining Co.,* 38 Hun, 637, and 108 N. Y. 638, which counsel for plaintiff cite as fully sustaining their contention, is clearly distinguishable from the present case. The statement of facts in that case is found in *New York, etc., R. Co.* v. *Atlantic Refining Co.,* 129 N. Y. 598, from which it appears that the defendant corporation was engaged in constructing some oil tanks on the line of the New York, Lake Erie & Western Railroad Company, at a place called Dykes' Switch. The employés of defendant left a car of lumber, *after it had been delivered to defendant,* and partly unloaded, in such unsafe condition that a portion of the lumber fell upon or was blown upon the track of the railroad company, causing the derailment of the engine operated by the plaintiff, Chapman. It will be seen that the defendant had complete control over the partly-unloaded car, and whatever duty was owing was owing by defendant. In the present case the defendants had parted with the control of the car. The railroad company owed the duty to decedent of causing an inspection or of providing a rule for inspection.

We think the circuit judge was right in his holding. Judgment affirmed.

The other Justices concurred.